# LEONARD ROTHGERBER *et al.*

*v.*

# THOMAS GOUGH.

FRAUDULENT SALES—*employment of vendor by vendee as agent.* Where a party sells out his business to another, while it is not a fraud *per se* for the vendor to be employed by the vendee as a clerk to carry on the business, it is a circumstance creating a strong presumption of fraud, and especially so when the former uses and controls the property as he did before the sale. In such a case, it requires clear and satisfactory proof, and the circumstances surrounding the transaction should clearly indicate honesty and good faith, to rebut the presumption.

APPEAL from the Superior Court of Chicago; the Hon. JOSEPH E. GARY, Chief Justice, presiding.

The opinion states the case.

Mr. JOHN LYLE KING, for the appellants.

Messrs. HERVEY, ANTHONY & GALT, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was an action of trespass *de bonis asportatis,* brought by appellee in the superior court of Chicago, against appellants, for levying a writ of attachment on property claimed by appellee. Appellants claimed that the goods were the property of one Bolshaw, who was indebted to Livingston, for whom Rothgerber was acting as agent, in a considerable sum of money; that he caused a writ of attachment to be issued and levied upon the goods as the property of Bolshaw. Appellee, on the other hand, claimed to have purchased the goods of Bolshaw before the writ issued against Bolshaw, and before the levy was made, and to have been in possession of

the property. Appellants insisted, that the sale was fraudulent, and made to hinder and delay creditors. The case was tried before a jury, who found a verdict in favor of plaintiff, and defendants entered a motion for a new trial, which the court overruled, and rendered judgment on the verdict, and defendants bring the case to this court on appeal, and seek a reversal.

It is first insisted, that the verdict is unsupported by the evidence. The main facts in the case are, that Bolshaw owned a saloon and was engaged in the sale of liquors; that he was, at the time of the sale, indebted to different persons in the sum of about ten thousand dollars; that the indebtedness to Livingston was a balance of an account for liquors purchased of him. There seems to have been no inventory of the stock at or prior to the sale, and Bolshaw continued to sell liquors and managed the business after as before the sale. The articles of agreement that were executed at the time, provided that Bolshaw should have power to purchase all necessary articles, to employ, pay and discharge employees, and this was to continue for one year from the time of sale.

It seems the property sold was claimed to be worth one or two thousand dollars more than he received, and he at first asked $9000 for the stock. He does not pretend that he ever offered to sell it to any other but one person, and says he does not remember his name. He, too, only claims to have received two thousand dollars in hand. He took notes running from six to eighteen months, and without security.

If this transaction was not conceived and executed in fraud of creditors, it has many strong marks of such a purpose. In the first place, Bolshaw was largely in debt, even beyond his ability to pay. His creditors were pressing him, and he was not able to meet their urgent demands for payment. He sells property, perhaps, for two thousand dollars less than its value—at any rate, less than he at first asked; receives but two thousand dollars in hand; the balance he agrees to receive in payments at periods of six, twelve and eighteen months; takes

notes of a man of whose means or ability to pay he testifies he had no knowledge, and without security. He does all this without taking an inventory, but only pretends that they looked over the stock and examined it casually, taking down the items on a piece of paper. He paid no portion of the money he received to his creditors, unless it were some small bills for family expenses, etc. Nor did he make any arrangement for the appropriation of the money that was to be subsequently received, to their payment. These circumstances leave scarcely a doubt on our minds that it was the intention of Bolshaw to defraud his creditors by making this sale.

It being necessary, however, that the purchaser should also have been aware of the fraudulent intention of the vendor, and to participate in that design, to render the sale void, it is necessary to examine the evidence to learn whether appellee is chargeable with the fraud intended by Bolshaw. That he, without experience in the business, should be willing in good faith to make so large a purchase on such a hazard, seems almost incredible. He could have formed no correct judgment as to the value of the property by the very superficial examination he made. He took no inventory to learn its value, nor do we see that he even called in an experienced friend to obtain his judgment as to its value. He did not, nor could he know from the means he employed, whether there were three or ten thousand dollars' worth of liquors. Business men, acting in good faith, rarely transact business in this manner.

Again, if the transaction was a fair one, why did he remove a portion of the goods from the building by the way of a back window and through an alley, and why was it that he retained Bolshaw in the full and entire management of the property, fully empowered to do any and all things he might have done before the sale? These things are not in the usual course of business, and, to say the least, create a very strong presumption of a fraudulent intention. While it is not a fraud *per se* for the vendor to be employed by the vendee as a clerk

to carry on the business, it is a circumstance creating a strong presumption of fraud, and especially so when he uses and controls the property as he did before the sale. In such a case, it requires clear and satisfactory proof to rebut the presumption. The circumstances surrounding the transaction in such a case should clearly indicate honesty and good faith to change the presumption. The circumstances and proof in this case we think are not of that character.

The reason assigned by Bolshaw, why the goods were removed through a back window and through an alley, would seem to clearly indicate that the object was to avoid observation, and not to call attention to the fact that they were being removed. It is true, Bolshaw says they did so because the floor at the front entrance was defective, but it seems to us that this was but a pretext, as any such defect could have readily been remedied if it existed ; but other heavy packages seem to have been removed that way. Men situated as they were, if their purposes had been honest, would naturally have desired to prevent suspicion by avoiding such a clandestine course. When fully considered, the proofs in this case impress us with the conviction that the verdict is not sustained by the evidence, and that the case should be passed upon by another jury. Taking all the testimony in the case, it, we think, fails to show that the transaction was *bona fide.* We are, therefore, of the opinion that the court below erred in overruling the motion for a new trial, and the judgment must be reversed and the cause remanded.

*Judgment reversed.*